REQUESTED BY: Senator John W. DeCamp Member of the Legislature State Capitol Building Lincoln, Nebraska 68509
Dear Senator DeCamp:
You have submitted to us a copy of LB 284, and have asked our opinion as to the constitutional validity of the distribution formula found in section 11 of the bill. We conclude that this formula is constitutionally suspect.
Sections 1 through 5 of the bill provide for an appropriation of $70 million dollars, to be distributed to the counties pro rata upon the basis of the assessed value of real estate in each county. The money is then to be distributed to the taxing subdivisions in the county on the basis of the property tax revenues to be received by each such taxing subdivision during the current fiscal year. You have asked for no opinion on the validity of these sections, nor of sections 6, 7, and 8 of the bill, so we express no opinion.
Section 9 of the bill recites the fact that the Supreme Court recently struck down sections 2, 3, 4, and 5 of LB 882, Laws 1980 (Neb.Rev.Stat. §§ 77-3601, 77-3602, 77-3603, and 77-3604 (Supp. 1980)). See, State ex rel. Douglas v.Marsh, 207 Neb. 598 (1980). LB 882 and LB 882A had appropriated $70 million dollars to be distributed to the counties, and ultimately to the taxing subdivisions within the counties, on a basis which the court held was arbitrary and unreasonable, and therefore unconstitutional. Section 9 also recites that the subdivisions had relied, to their detriment, upon getting the money allocated to them by LB 882, that he disaster facing them was not their fault, and that it was the responsibility of state government to mitigate the damage caused by this situation.
Section 10 of the bill creates the Governmental Subdivisions Economic Emergency Disaster Relief Fund, and appropriates $6 million dollars to it.
Section 11 provides:
 It shall be the responsibility of the State Auditor to determine which subdivisions of state government, in reliance upon Laws 1980, LB 882, budgeted funds which they will not now receive, to total all the losses of subdivisions affected in this manner, and to distribute the fund created in section 10 of this act on a pro rata basis to the losing subdivisions to compensate them for their loss in this one-time economic disaster.
This section is far from clear. It could be interpreted to mean that the Auditor was to determine how much each subdivision expected to receive under LB 882, which it will not now receive because of the action of the court, and to distribute the $6 million dollars pro rata on the basis of such losses.
From reading your letter, however, it is obvious that that is not what you intended. What you intended was that the difference between what the subdivisions would have received under LB 882 and what they will receive under LB 284 be calculated, and that the $6 million dollars be distributed to those which will receive less under LB 284, pro rata with respect to the differences.
We find this provision of doubtful constitutionality. First, of course, it is vague and uncertain, and does not properly express your intention. This could be easily corrected, but the more fundamental objection is that we again have unreasonable classification.
The court struck down sections 2, 3, 4, and 5 of LB 882 because the bill put each county in a separate class, and froze the classes. There was no rational basis for the distributions under LB 882. Section 11 of LB 284 proposes to make a one-time distribution of $6 million dollars based in part on a formula which the court has already found unreasonable.
To illustrate, let us take two school districts, A and B, located in different counties. Under LB 882, District A would have gotten $175,000.00, and District B $125,000.00. Both, of course, took these sums into account in their budgeting process. Under section 4 of LB 284, each of them will receive $150,000.00. This indicates that, if the formula for distribution set up in sections 3 and 4 of LB 284 is correct and reasonable, the two districts are in the same class in the relevant respects, and should be treated alike with respect to the largesse of the state.
However, under the formula created by section 11 of the bill, District A will receive a portion of the $6 million dollars, based on its $25,000.00 `loss' while District B will receive nothing. We believe the court would strike down this system. It is an attempt to give some effect to the formula for distribution found in LB 882, which the court has already found unreasonable. An unreasonable formula cannot be the foundation for a reasonable one. We therefore believe that the formula for distribution found in section 11 of the bill would be difficult to defend.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General